UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| VERA-JEAN RANDALL, )<br>)<br>Plaintiff, )<br>)<br>VS. )<br>)<br>L-3 COMMUNICATIONS )<br>CORPORATION, ET AL., )<br>)<br>Defendants. ) | CIVIL ACTION NO.<br><br>3:16-CV-3000-G |

**MEMORANDUM OPINION AND ORDER**

Before the court is the defendant James Daniel Ivey's motion to dismiss the plaintiff's claim against him (docket entry 4). For the reasons stated below, the motion is granted.

I. BACKGROUND

A. Factual Background

The plaintiff, Vera-Jean G. Randall ("Randall"), commenced this action against the defendants, L-3 Communications Corporation ("L-3"), James Daniel Ivey ("Ivey"), and John T. De Monic, Jr., alleging various claims arising out the termination of her employment by her employer, L-3. Plaintiff's Original Petition

("Complaint") (docket entry 1-3). L-3 is a United States Air Force contractor. *Id.* ¶ 4.1. Ivey is an Air Force Program Security Representative who is responsible for reporting breaches in security protocol by Air Force contractors, including L-3. *Id.* ¶ 4.2; Ivey's Motion to Dismiss ("Motion") at 1 (docket entry 4). Randall began working for L-3 in September of 2012. Complaint ¶ 4.2. Shortly after, Ivey propositioned Randall for sex on two separate occasions. *Id.* ¶¶ 4.2-4.3. Randall declined both propositions. *Id.*

The day following Ivey's second proposition, Randall was unable to access her work accounts at L-3. *Id.* ¶ 4.3. Randall's accounts had been disabled because Ivey had falsely told L-3 that Randall was a "Lockheed Martin spy." *Id.* After Randall reported to her supervisor that Ivey was retaliating, her account access was promptly restored. *Id.* ¶ 4.4. Randall did not file a formal sexual harassment or retaliation complaint against Ivey to avoid compromising L-3's work with the Air Force. *Id.*

During the years of 2014 and 2015, Randall reported several security infractions that L-3 failed to act upon. *Id.* ¶ 4.5. On May 11, 2015, Ivey falsely claimed that Randall tried to "cover up a security incident" and recommended removal from her position with L-3. *Id.* ¶ 4.6. Randall informed her supervisor, Michelle Dockins, about Ivey's retaliatory motive. *Id.* However, on May 18, 2015, Randall was again locked out of L-3's system, rendering her unable to work. *Id.*

On May 20, 2015, Randall filed a complaint with L-3, contending that she was locked out of her account because Ivey was retaliating over her previous sexual harassment claim.  *Id.* ¶ 4.7.  On June 23, 2015, Randall met with L-3 supervisor Dean Hauntenan ("Hauntenan") about her complaint.  *Id.*  Hauntenan informed Randall that Ivey had admitted all facts regarding Randall's prior sexual harassment allegations.  *Id.*  However, Hauntenan advised Randall that because Ivey was a customer of L-3, and "ethics cases against customers are 'hard to press,'" Hauntenan would not find in Randall's favor.  *Id.*

On June 30, 2015, Randall was terminated from L-3 as a result of Ivey's May 2015 allegation against her.  See *id.* ¶¶ 4.6-4.8.  On July 13, 2015, the Air Force cleared Randall and restored her security clearance.  *Id.* ¶ 4.9.  Randall contends that Ivey tortiously interfered with her employment at L-3.  *Id.* ¶ 5.10.

### B. Procedural Background

On September 19, 2016, Randall commenced this action in the 191st Judicial District Court of Dallas County, Texas.  See *id.*  On October 26, 2016, the defendants removed the case to this court based on diversity jurisdiction. Defendants' Notice of Removal at 3 (docket entry 1).  On November 2, 2016, Ivey filed the instant motion to dismiss Randall's claim against him.  *See* Motion.  The motion is now ripe for decision.

II. <u>ANALYSIS</u>

Ivey contends that Randall's claim against him should be dismissed on three independent grounds: (1) Randall failed to plead facts supporting her claim; (2) Ivey is entitled to official immunity because "he performed his duties in good faith acting within the scope of his governmental authority"; and (3) Ivey was privileged and justified in reporting the security breaches to L-3. Motion at 3.

A. <u>Legal Standard</u>

1. *Rule 12(b)(6) Motion to Dismiss*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [his or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, brackets, and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555)

(internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading standard to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's

allegations "nudge" [his or her] claims against the defendant "across the line from conceivable to plausible." See *id.* at 679, 683.

### B. Application

To recover for tortious interference with contract under Texas law, a plaintiff must prove: "(1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred." *Amigo Broadcasting, LP v. Spanish Broadcasting System, Inc.*, 521 F.3d 472, 489 (5th Cir. 2008) (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).

Ivey contends that Randall's claim fails because she has not pled the existence of a contract. Motion at 4. Randall contends that because she pled that she is an at-will employee with L-3, and tortious interference with contract applies to at-will employees, Randall has sufficiently pled that a contract existed with L-3. *See* Plaintiff's Response to Ivey's Motion to Dismiss ("Randall's Response") at 5-6 (docket entry 10).

To prevail on tortious interference with contract, a plaintiff must allege the existence of a specific contract. See *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.--Houston [14th Dist.] 2011, pet. denied). A failure to specifically reference an employment contract -- either written or oral -- constitutes a failure to "identify the contract with which the individual [defendant is] alleged to have interfered." See

*Peveto v. Invista S.A. R.L.*, No. 1:16-CV-3, 2016 WL 4942047, at *6 (E.D. Tex. Aug. 19, 2016), report and recommendation adopted sub nom. *Peveto v. Invista S.A. R.L*, No. 1:16-CV-3, 2016 WL 4917565 (E.D. Tex. Sept. 15, 2016) (holding that a general reference to an "employment relationship" in the complaint is insufficient to allege the existence of an employment contract); *Odem v. Deloitte & Touche, LLP*, No. 04-09-00747-CV, 2011 WL 381721, at *7 (Tex. App.--San Antonio Feb. 2, 2011, pet. denied) (requiring a specific reference to a contract between the employer and the employee; the employment relationship alone is insufficient to establish the existence of a contract).

Here, while Randall has alleged that she had an employment relationship with L-3, Randall has failed to point to a specific contract governing this relationship. Randall contends that she is an at-will employee and relies on the case *Knox v. Taylor*, 992 S.W.2d 40, 57-58 (Tex. App.--Houston (14th Dist.) 1999, no pet.), for the proposition that "[a] terminable-at-will contract may support a claim for tortious interference." Randall's Response at 5-6. However, in *Knox*, the court analyzed a specific contract. *See* 992 S.W.2d at 57-58 (analyzing the "Titan/SMGA" contract). *Knox* does not support the notion that it is unnecessary plead the existence of a contract when there is an at-will employment relationship.

The instant case is analogous to *Peveto v. Invista S.A. R.L.*, above, where the "Plaintiff fail[ed] to specifically identify the contract with which the [defendant is]

- 7 -

alleged to have interfered." 2016 WL 4942047, at *6.  While it is entirely possible that a contract between L-3 and Ivey existed, Randall has not pointed to it; rather, Randall has only pled the existence of a general employment relationship.  Therefore, Randall's claim for tortious interference fails and her claim against Ivey is dismissed.  In view of this conclusion, it is unnecessary to discuss the other grounds of Ivey's motion.

### III.  CONCLUSION

For the reasons stated above, Ivey's motion to dismiss Randall's claim against him is **GRANTED**.

Randall asserted in her response that she "should be allowed to replead her causes of action rather than having her claims dismissed."  Randall's Response at 6.  The court agrees.  Accordingly, Randall shall have leave to amend her complaint to state a claim against Ivey if she can.  Any such amended complaint must be filed and served no later than **February 21, 2017**.

**SO ORDERED**.

January 31, 2017.

*A. Joe Fish*
**A. JOE FISH**
**Senior United States District Judge**