UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


VERA-JEAN RANDALL,          )
                                         )
           Plaintiff,          )
                                         )         CIVIL ACTION NO.
VS.                          )
                                         )         3:16-CV-3000-G
L-3 COMMUNICATIONS        )
CORPORATION, ET AL.,       )
                                         )
          Defendants.     )


## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant, James Daniel Ivey ("Ivey"), to dismiss the claims of the plaintiff, Vera-Jean G. Randall ("Randall"), pursuant to FED. R. CIV. P. 12(b)(6) (docket entry 15). For the reasons stated below, Ivey's motion is denied. Furthermore, this case is remanded to the state court from which it was removed.

## I. BACKGROUND

On September 19, 2016, Randall commenced this action in the 191st Judicial District Court of Dallas County, Texas. Defendants' Notice of Removal ("Notice") at 1 (docket entry 1). On October 26, 2016, the defendants removed the case to this court based on diversity jurisdiction. *Id.* at 3. Ivey filed a timely motion to dismiss

pursuant to FED. R. CIV. P. 12(b)(6).  *See* Ivey's First Motion to Dismiss (docket

entry 4).  The court granted Ivey's motion and granted Randall leave to amend her

complaint.  *See* Memorandum Opinion and Order of January 31, 2017 (docket entry

13).  Randall filed an amended complaint on February 21, 2017.  Randall's Amended

Complaint ("Amended Complaint") (docket entry 14).  On March 6, 2017, Ivey filed

the instant motion to dismiss.  *See* Ivey's Second Motion to Dismiss ("Motion to

Dismiss") (docket entry 15).  Randall then filed a timely response, which was

followed by Ivey's timely reply.  *See* Randall's Response ("Response") (docket entry

18); Ivey's Reply ("Reply") (docket entry 20).  The motion is now ripe for decision.[1]

## II.  ANALYSIS

### A.  Legal Standards

#### 1.  *Rule 12(b)(6) Motion to Dismiss*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead

'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina

Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic

Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182

(2008).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, a plaintiff's obligation to provide the grounds of [his

---

[1]      The court summarized the factual background of this case in a recent
memorandum opinion and order dated January 31, 2017.

or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, brackets, and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading standard to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiff must "plead[] factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" [his or her] claims against the defendant "across the line from conceivable to plausible." See *id.* at 679, 683.

### 2. *Rule 12(b)(6) Dismissal Based on an Affirmative Defense*

"Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir. 1986); 5B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2013) ("As the case law makes clear, the complaint also is subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy."). "In the usual case, this court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint." *Simon v.*

*Telsco Industries Employee Benefit Plan*, No. 3:01-CV-1148-D, 2002 WL 628656, at *1

(N.D. Tex. Apr. 17, 2002) (Fitzwater, J.).

## B.  Application

### 1.  *Randall's Claim for Tortious Interference with*
*Contractual and Business Relationships*

To recover for tortious interference with contract under Texas law, a plaintiff

must prove:  "(1) that a contract subject to interference exists; (2) that the alleged act

of interference was willful and intentional; (3) that the willful and intentional act

proximately caused damage; and (4) that actual damage or loss occurred."  *Amigo*

*Broadcasting, LP v. Spanish Broadcasting System, Inc.*, 521 F.3d 472, 489 (5th Cir.

2008) (quoting *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).

Ivey contends that Randall has failed to plead facts sufficient to establish the second

and third elements of tortious interference.[2]  Motion to Dismiss at 5.  Accordingly,

the court addresses those elements below.

### a.  Willful and Intentional Interference

To show willful and intentional interference, the defendant "must have 'actual

knowledge of the contract or business relation in question, or knowledge of facts and

---

[2]      The court notes that Randall's amended complaint sufficiently alleges
that she had an oral, at-will employment contract with L-3.  *See* Amended Complaint
¶¶ 1.2-1.3.  Such contracts are permissible subjects of tortious interference claims.
*Massey v. Houston Baptist University*, 902 S.W.2d 81, 85 (Tex. App.--Houston [1st
Dist.] 1995, writ denied) ("An at-will employment agreement can be the subject of a
claim of tortious interference.").

circumstances that would lead a reasonable person to believe in the existence of the contract or business relationship.'" *Amigo Broadcasting, LP*, 521 F.3d at 490 (quoting *Steinmetz & Associates, Inc. v. Crow*, 700 S.W.2d 276, 277-78 (Tex. App.--San Antonio 1985, writ ref'd n.r.e.)). Moreover, "a plaintiff is not required to prove intent to injure, but rather 'only that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *Id.* (quoting *Southwestern Bell Telephone Company v. John Carlo Texas, Inc.*, 843 S.W.2d 470, 472 (Tex. 1992)).

Here, Randall alleged sufficient facts to support the willful and intentional interference prong. First, Randall alleged that Ivey had knowledge "that would lead a reasonable person to believe in the existence of the contract or business relationship." *Amigo Broadcasting, LP*, 521 F.3d at 490. The complaint avers that Ivey had dealings with Randall at work in 2012, *see* Amended Complaint ¶¶ 1.4-1.7, "had come back into the picture of Plaintiff's work environment" in 2015, and "had Plaintiff removed as Information Assurance Manager" in May of 2015. Amended Complaint ¶ 1.8. If these allegations are accepted as true, it is plausible to infer that Ivey had "knowledge of [the] facts and circumstances" of Randall's ongoing employment relationship with L-3. *Amigo Broadcasting, LP*, 521 F.3d at 490.

Moreover, the court can plausibly infer that Ivey willfully and intentionally interfered with Randall's employment relationship. At the time of Ivey's May 11,

2015 report, he knew that Randall's security credentials were critical to her ability to work and would likely be revoked upon his submission of a complaint. *See generally* Amended Complaint. This is evidenced by the fact that Randall and Ivey had been through this scenario once before in 2012. During the first incident, as a result of Randall rebuffing multiple sexual propositions from Ivey, *see* Amended Complaint ¶¶ 1.4-1.6, Ivey falsely reported to L-3 that Randall was a "Lockheed Martin Spy." *Id.* Consequently, Randall's work accounts and access to L-3's system were disabled -- leaving Randall unable to work. See *id.* Given the ramifications that Randall faced from Ivey's prior false report, the court can plausibly infer that Ivey knew that his second false report, *id.* ¶ 1.8, would cause Randall to face similar -- if not more severe -- consequences.

In addition to the previous incident, Ivey, given his position with the USAF, likely knew that making a false report implicating national security concerns would lead to severe consequences for Randall. Plausible consequences certainly include the suspension of a security clearance and the termination of employment. It is a far stretch to infer that Ivey was not, at a minimum, substantially certain that Randall would suffer from these serious consequences -- just as she had suffered before. Therefore, the court concludes that Ivey could have "believe[d]" that Randall's termination was "substantially certain to result from [his conduct]." *Amigo Broadcasting, LP*, 521 F.3d at 490.

b.  Proximate Cause

Ivey contends that Randall has failed to plead proximate cause.  Motion to
Dismiss at 6.  To establish proximate cause, the plaintiff must show that the
defendant actively persuaded a party to a contract to breach it.  *Amigo Broadcasting,
LP*, 521 F.3d at 493.  "The two elements of proximate cause are cause in fact (or
substantial factor) and foreseeability."  *IHS Cedars Treatment Center of DeSoto, Texas,
Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).  "Cause in fact is established when
the act or omission was a substantial factor in bringing about the injuries, and
without it, the harm would not have occurred."  *Id.* at 799.  "In other words,
proximate cause is that cause, unbroken by any new and independent cause, that
produces injury and without which the injury would not have occurred."  *Texas
Campaign for the Environment v. Partners Dewatering International, LLC*, 485 S.W.3d
184, 197 (Tex. App.--Corpus Christi-Edinburg 2016, no pet.).

Ivey maintains that his conduct "was several steps removed from the
termination decision" and therefore "did not proximately cause the termination of
Plaintiff's employment."  Motion to Dismiss at 7.  Ivey contends that he merely
furnished a condition that made Randall's injuries possible:  it was the USAF that
suspended Randall's security clearance and L-3 that terminated Randall's
employment.  *Id.*  Therefore, Ivey contends that his conduct was too attenuated to be
a "substantial factor" in the termination of Randall's employment.  *Id.*

Ivey's argument is without merit. It is true that "[i]f the defendant's conduct merely furnished a condition that made the injuries possible, there can be no cause-in-fact." *Id.* (citing *IHS Cedars*, 143 S.W.3d at 799). Here, however, according to the complaint, Ivey did far more than merely "furnish[ing] a condition." The complaint closely links Ivey's conduct to Randall's termination: Ivey falsely reported that Randall committed a serious security violation, and similar to the first incident, the USAF immediately suspended her security clearance, and shortly thereafter, L-3 terminated her for lacking the necessary security clearance. Amended Complaint ¶¶ 1.5, 1.8, 1.10. In short, Ivey's false report, *see id.* ¶ 1.8, left Randall unable to work and Randall's inability to work directly resulted in her termination. *Id.* ¶¶ 1.8, 1.10. The complaint does not indicate that Randall's employment status would have changed in any way had Ivey not submitted a false report. Thus, Ivey set in motion a closely linked chain of events interfering with Randall's employment with L-3 and resulting in the termination of her employment.

Moreover, the Texas Court of Appeals in *Leach v. James*, 455 S.W.3d 171 (Tex. App.--Amarillo 2014, pet. denied), summarized the law governing proximate cause in relation to interference with employment contracts:

> First, accusing an employee of impropriety and demanding his termination does not *ipso facto* mean the allegation proximately caused the employee's termination. Second, independent investigation undertaken by the employer (even if instigated by inaccurate accusations of misconduct) that creates or verifies basis for termination

> attenuates the legal nexus between the complaints
> instigating the investigation and the ultimate decision.
> However, the record must establish that the decision to
> terminate was based upon considerations or circumstances
> arising from the independent investigation. In a summary
> judgment setting, evidence of the latter must be of
> sufficient ilk to permit such an inference as a matter of law;
> one cannot so infer based upon unclear or contradictory
> evidence.

*Id.* at 175. The *Leach* court held that the employer's investigation -- verifying material aspects of the accuser's allegations -- attenuated the causal link between the third party's alleged tortious conduct and the employer's firing. See *id.* at 177.

Here, unlike in *Leach*, the decisions of the USAF and L-3 were not based on information obtained in their own independent investigations. Rather, if reasonable inferences are taken in favor of Randall, it appears that the decisions of the USAF and L-3 were based entirely on Ivey's false report. *See* Amended Complaint ¶¶ 1.7-1.11. The decisions to suspend Randall's security clearance by the USAF and to terminate her employment by L-3 did not alter the presumable "natural sequence of events" set in motion by Ivey's report of a serious breach of national security. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 857 (Tex. 2009) ("A new and independent cause alters the natural sequence of events, produces results that would not otherwise have occurred, is an act or omission not brought into operation by the original wrongful act of the defendant, and operates entirely independently of the defendant's allegedly negligent act or omission."). In sum, the

complaint plausibly alleges both the cause in fact and forseeability requirements of proximate cause. As a result, Ivey's motion to dismiss Randall's tortious interference claim is denied.

### 2. *The Affirmative Defense of Official Immunity*

Ivey contends that he is entitled to official immunity from Randall's tortious interference claim. Motion to Dismiss at 8. Official immunity encourages public officials to "act in the public interest with confidence and without the hesitation that could arise from having their judgment continually questioned by extended litigation." *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 424 (Tex. 2004). "The purpose of official immunity is to insulate the functioning of government from the harassment of litigation, not to protect erring officials." *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994). It applies to: (1) government officers, (2) performing discretionary duties within the scope of their authority; and (3) performing those duties in good faith. *Id.* at 9. Here, the parties do not appear to dispute that Ivey served as a government official. *See* Motion to Dismiss at 9; Response at 9-10. Accordingly, the court must determine whether Ivey acted within the scope of his authority and in good faith.

a. Scope of Authority

Ivey has the burden of proving that he was "discharging the duties generally assigned to [him]" at the time of the May 11 report. *Powell v. Foxall*, 65 S.W.3d 756, 763 (Tex. App.--Beaumont 2001, no pet.). Ivey contends that

> As alleged in Plaintiff's Amended Complaint, her employer, Defendant L-3, is a USAF defense contractor. *See* Pl.'s Amended Compl., ¶ 1.1. Defendant Ivey worked as a USAF Program Security Representative (referred to by Plaintiff as Program Officer). *See* Pl.'s Amended Compl., ¶ 1.4. The USAF contracted with Defendant Ivey's employer to perform governmental duties, including reporting alleged security breaches. *See* Pl.'s Amended Compl., ¶ 1.4. On May 11, 2015, Defendant Ivey reported an alleged security breach by Plaintiff to the USAF. *See* Pl.'s Amended Compl., ¶ 1.8.

Motion to Dismiss at 9. In order to determine the scope of Ivey's authority, the court must first determine the duties generally assigned to Ivey from the face of the complaint. See *Almond v. Tarver*, 468 F. Supp. 2d 886, 907 (E.D. Tex. 2006) (requiring evidence of the officer's scope of authority to determine whether he acted pursuant to duties assigned to him).

As shown above, Ivey cites paragraphs 1.4 and 1.8 in the amended complaint as evidence of the scope of his authority. Paragraph 1.4 states:

> In November or December of 2012, Plaintiff was propositioned for sex in a bar by Dan Ivey, who is a USAF Program Officer, a client of Plaintiff's employer, L-3. Ivey told Plaintiff things were not going well with his wife, and he showed Plaintiff pictures of his "girlfriend" in her 30's,

posing on the bed (apparently for him) in her underwear. Plaintiff turned Ivey down.

Amended Complaint ¶ 1.4.  Paragraph 1.8 states:

> On May 11, 2015, Ivey (who had come back into the picture of Plaintiff's work environment due to changes in L-3) had Plaintiff removed as Information Assurance Manager, falsely claiming that Plaintiff was trying to "cover up an (sic) security incident."  Plaintiff met with Ivey and Ms. Dockins on May 11, 2015.  Plaintiff specifically asked Ivey if he was initiating this because of what happened two years before.  Ivey claimed at that time he did not know what Plaintiff was talking about.  Plaintiff was locked out of L-3's system on May 18, 2015, even though she made her immediate supervisor -- Ms. Dockins -- aware of Ivey's retaliatory motive.

Amended Complaint ¶ 1.8.  In his motion to dismiss, Ivey concludes, "Defendant Ivey performed his discretionary duty by making the report of the suspected security breach, acting within the scope of his authority authorized by the USAF."  Motion to Dismiss at 10.

However, the complaint does not specifically -- nor generally -- state what duties the USAF authorized Ivey to undertake.[3]  See *Aldridge v. De Los Santos*, 878

---

[3]     It is true that the background section of the court's January 31, 2017 memorandum opinion and order states, "Ivey is an Air Force Program Security Representative who is responsible for reporting breaches in security protocol by Airforce contractors, including L-3."  Memorandum Opinion and Order of January 31, 2017 at 2 (citing Original Complaint ¶ 4.2 (docket entry 1-3) and Ivey's First Motion to Dismiss at 1 (docket entry 4)).  Evident from the citation of Ivey's first motion to dismiss, the description of Ivey's position and reporting responsibility was derived from Ivey's first motion to dismiss -- not from the complaint.  Therefore,

(continued...)

S.W.2d 288, 298 (Tex. App.--Corpus Christi 1994, writ dism'd w.o.j.) ("Nor does it state specifically how making these alleged defamatory statements falls within the scope of his authority as a state employee.").  It merely contains an assertion of Ivey's job title and general allegations that Ivey made false reports, engaged in retaliatory conduct, and "had come back into the picture of Plaintiff's work environment." *See generally* Amended Complaint.  However, the court needs more than general assertions of the injury-causing conduct to determine the scope of authority.  See *Almond*, 468 F. Supp. 2d at 907.  Nor does the complaint show the purpose of Ivey's actions.  See *Anderson v. Bessman*, 365 S.W.3d 119, 126 (Tex. App.--Houston [1st Dist.] 2011, no pet.) ("If the purpose of serving the employer's business motivates the employee, his acts are within the scope of employment.").  Ivey has not established as a matter of law that his report was within his generally assigned duties.  Ivey's suggestion otherwise requires the court to improperly infer facts not in the complaint and in favor of Ivey -- the non moving party.  See *In re Katrina Canal*, 495 F.3d at 205.  Therefore, Ivey's official immunity defense fails on this element alone.

b.  Good Faith

Ivey contends that the complaint establishes that he acted in good faith in his May 11, 2015 report.  Motion to Dismiss at 11; Reply at 8.  Specifically, Ivey

---

[3](...continued)
because this allegation does not appear on the face of the complaint, it will not be considered in deciding the instant motion.

contends that Randall committed a security violation by not adequately reporting that her 2014-2015 security reports "never made it up the chain of command." Motion to Dismiss at 11; Reply at 7-8. Ivey further asserts that Randall was required to report this to Ivey. Motion to Dismiss at 11. Ivey avers that when he became aware of these security violations and Randall's failure to report to him, Ivey, "acting within the scope of his authority, report[ed] facts of this *potential* violation to the USAF on May 11, 2015." *Id.* (emphasis in original); see also Reply at 8. Ivey concludes that "a reasonably prudent official could have believed that Defendant Ivey's reporting the suspected security breach was justified based on Plaintiff's failure to report to him." Motion to Dismiss at 11; Reply at 8.

A government official acts in good faith when "a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Ballantyne*, 144 S.W.3d at 426 (internal citation omitted); see also *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 164 (Tex. 2004). "The standard of good faith as an element of official immunity is not a test of carelessness or negligence, or a measure of an official's motivation." *Ballantyne*, 144 S.W.3d at 426. In other words, the court may not consider the "subjective bad faith" of the government official. *Id.* at 428.

Here, the conduct in question is Ivey's May 11, 2015 report. Amended Complaint ¶ 1.8; see also Motion to Dismiss at 11; Reply at 8. In order to satisfy his burden of proving good faith, Ivey must first point to allegations in the complaint describing the information Ivey possessed at the time of the report. See *Ballantyne*, 144 S.W.3d at 426. Then, Ivey must point to allegations in the complaint that allow the court to conclude that Ivey could have believed that his actions were reasonable.[4] See *id.*

However, Ivey fails to meet his burden. First, the complaint does not contain allegations regarding the information that Ivey possessed prior to his report. *See* Amended Complaint ¶ 1.7. Ivey contends that "[a]ccording to Plaintiff, when *Ivey became aware of these facts*, he reported his security concerns to the USAF." Reply at 8 (citing Amended Complaint ¶ 1.8) (emphasis added). Ivey's argument, however, requires an assumption of facts not alleged in the complaint and for the court to make improper inferences in Ivey's favor. See *In re Katrina Canal*, 495 F.3d at 205. It is not apparent from the complaint that Ivey possessed any information about Randall's actions in paragraph 1.7 at the time of his report. Moreover, paragraph 1.8 does not discuss Ivey's knowledge, it only states that Ivey "had come back into the

_____

[4]     The face of Randall's complaint is replete with information alleging that Ivey's conduct was the result of his "retaliatory motive." *See* Amended Complaint ¶¶ 1.8-1.9. However, the court will not consider Ivey's motivation in its good faith analysis. *Ballantyne*, 144 S.W.3d at 428 (noting that a public official's motivation should not be considered).

picture of Plaintiff's work environment." Amended Complaint ¶ 1.8. The complaint

fails to provide insight into what Ivey did or did not know about Randall's actions.

Accordingly, from the complaint, the court cannot hold that Ivey's actions were

reasonable because it is unclear what information he possessed at the time of the

incident. Cf. *Joe*, 145 S.W.3d at 164-65 (detailing information that the public

official possessed and considered prior to the decision in question); *Rhodes v. Torres*,

901 S.W.2d 794, 799 (Tex. App.--Houston [14th Dist.] 1995, no writ). Ivey's

defense fails for this reason alone.

Second, even if the court improperly assumes that Ivey knew that "[Randall]

wrote up 'several security infractions that never made it up the chain of command,'"

*see* Reply at 8 (quoting Amended Complaint ¶ 1.7), the complaint does not establish

that Ivey could have believed that his conduct was objectively reasonable. Ivey

justifies his actions because of Randall's failure to report a security violation to him.

*See* Motion to Dismiss at 11. However, regarding Randall's reporting obligations, the

complaint only states that Randall was required to report the violations to "the

DAA." Amended Complaint ¶ 1.7 (stating that the plaintiff "was advising the DAA

of the issues on the program, per Plaintiff's responsibility to the USAF"). If Randall

followed protocol and satisfied her obligations by reporting her supervisor's violations

to the DAA, then it is unlikely that Ivey could reasonably report any involvement by

Randall in a security incident.

Moreover, the complaint is devoid of details that could reasonably allow Ivey to report that Randall was trying to "cover up" a security incident. Reporting that Randall attempted to cover up a security incident far exceeds the mere reporting of a "suspected" or "potential" security breach, *see* Motion to Dismiss at 11, or a mere "security concern." *See* Reply at 8. Ivey's report implies that Randall actively concealed a security incident;[5] however, the complaint does not establish that this occurred.

The absence of facts supporting Ivey's report of a cover up also lends credence to Randall's allegation that Ivey's report was false. Courts have held that false reports far exceed what a reasonable official could have believed was justified. See *Vela v. Rocha*, 52 S.W.3d 398, 406 (Tex. App.-- Corpus Christi 2001, no pet.) ("Appellants' summary judgment evidence does not establish that Hollingsworth's reports about Rocha's behavior were truthful. Therefore, the summary judgment evidence does not establish that Hollingsworth acted in good faith, and Hollingsworth did not establish that she is entitled to official immunity."); *Garcia v. City of Harlingen*, No. CIV. A. B-06-CV-134, 2009 WL 159583, at *15 (S.D. Tex. Jan. 21, 2009) ("Thus, the issue of good faith will in at least one decisive respect turn on the fact question of whether the sexual harassment incidents of which Plaintiff

---

[5] "Cover up" is defined as "a usually concerted effort to keep an illegal or unethical act or situation from being made public." Cover up, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 268 (10th ed. 1999).

complained actually occurred.").  Based on the complaint, Ivey cannot establish as a

matter of law that his actions were in good faith.  See *Kinsey v. Ryan*, No. CIV.A.

398CV-1000-BC, 1998 WL 920329, at *4 (N.D. Tex. Dec. 31, 1998) (Boyle, M.J.)

("Kinsey has therefore pled a specific allegation that may negate a grant of official

immunity to Slaughter, Ryan and Giles, namely, he has attacked their assertion that

their actions were done in good faith, a prerequisite to the granting of official

immunity."); *Hutchison v. Brookshire Brothers, Ltd.*, 205 F. Supp. 2d 629, 646 (E.D.

Tex. 2002) ("[The plaintiff's] allegation[s] run[] counter to [the defendant's]

assertion that he acted in good faith; therefore, the motion to dismiss for failure to

state a claim based on the mere assertion of official immunity is DENIED.").

Therefore, Ivey has not met his burden of establishing the affirmative defense of

official immunity.  See *University of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000)

("[T]o obtain summary judgment on official immunity, the governmental employee

must conclusively prove each element of the defense.").[6]

---

[6]     Moreover, while it is permissible to raise the affirmative defense of
official immunity on a motion to dismiss, courts have held that it is more appropriate
in a motion for summary judgment.  See *Bisong v. University of Houston*, No. CIV.A.H-
06-1815, 2006 WL 2414410, at *5-6 (S.D. Tex. Aug. 18, 2006) ("The affirmative
defense of official immunity is more appropriately raised in a motion for summary
judgment or at trial."); *Liu v. Moorman*, No. 4:09-CV-0415-A, 2010 WL 2301019, at
*5 (N.D. Tex. June 3, 2010) (McBryde, J.) ("Official immunity is thus more properly
asserted in a motion for summary judgment rather than, as here, a motion to
dismiss."), *aff'd sub nom. Siyuan Liu v. Jackson*, 418 Fed. App'x 354 (5th Cir. 2011).
Ivey's argument depends on what Randall was and was not required to report and
(continued...)

### 3.  *The Affirmative Defense of Privilege or Justification*

Privilege or justification is an affirmative defense to a tortious interference claim.  *Prudential Insurance Company of America v. Financial Review Services, Inc.*, 29 S.W.3d 74, 80 (Tex. 2000); *Texas Beef Cattle Company v. Green*, 921 S.W.2d 203, 210 (Tex. 1996).  According to the Texas Supreme Court, "[T]he justification defense can be based on the exercise of either (1) one's own legal rights or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken."  *Prudential Insurance Company of America*, 29 S.W.3d at 80 (citing *Texas Beef Cattle*, 921 S.W.2d at 211).  If the defendant conclusively establishes that he had a legal right to interfere with the contract, the defendant's motive is irrelevant.  *Id.*

Ivey contends that his conduct falls into the first category of justified communications -- that "his communication of his suspicions regarding Plaintiff's breaches of our national security were in exercise of his own legal rights" for two reasons.  Reply at 9.  First, Ivey contends that his conduct was justified because the USAF contracted with him to perform governmental functions, including reporting security breaches.  Motion to Dismiss at 12.  As such, Ivey avers that he was acting

---

[6](...continued)
what Ivey did or did not know about Randall's conduct.  This likely comes down to a question of fact because the answer is not apparent from the "evidentiary record" alleged in the complaint.  *Garcia*, 2009 WL 159583, at *15 ("The Court will not decide this fact question under a Motion to Dismiss.").  The point is further underscored because every case cited by Ivey in support of this defense was at least at the summary judgment stage.  *See generally* Motion to Dismiss; Reply.

pursuant to his contractual *obligations* to the USAF and that his "contractual responsibility to the USAF constitutes a greater right than Plaintiff's right to unfettered employment." *Id.* Second, Ivey contends that because he was contracted by the USAF to report security violations, "he was exercising his *own* contractual rights when he reported the suspected security breach." *Id.* at 12-13 (emphasis added) (citing *Prudential Insurance Company of America*, 29 S.W.3d at 80 and *Montgomery v. Phillips Petroleum Co.*, 49 S.W.2d 967, 972 (Tex. App.--Amarillo 1932, writ ref'd)).

To determine whether the defendant's conduct falls within a specific right or obligation, courts look to the scope of that right. See *Prudential Insurance Company of America*, 29 S.W.3d at 81 ("But that does not mean that Prudential could say or do anything under the guise of exercising a privilege."); cf. *Gulf Liquids New River Project, LLC v. Gulsby Engineering, Inc.*, 356 S.W.3d 54, 77-78 (Tex. App.--Houston [1st Dist.] 2011, no pet.) (considering specific contractual rights in determining whether the defense of justification applies). Here, the complaint does not contain facts establishing the scope of Ivey's contractual rights to interfere with Randall's employment agreement nor does it establish Ivey had "a good-faith claim to a colorable legal right." *Prudential Insurance Company of America*, 29 S.W.3d at 80. Accordingly, the court cannot determine as a matter of law that Ivey's actions were

"based on the exercise of either (1) [his] own legal rights or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken." *Id.*

Even if the court entertains Ivey's argument that he had a contractual right to report security violations, Ivey has not met his burden of showing that he was exercising his contractual rights in the instant situation. Ivey relies on *Prudential Insurance Company of America*, where the Texas Supreme Court determined that an insurance company did not conclusively establish its justification defense. *Id.* at 83. After carefully scrutinizing the defendant's conduct in relation to its contractual rights, the court held that some of the defendant's conduct was justified: the defendant could communicate with its policyholders about certain subjects as a matter of law. *Id.* at 81. However, other conduct was not justified. *Id.* Specifically, the court held that the privilege "would not authorize [the defendant] to falsely and maliciously disparage [the plaintiff]." *Id.* at 82.

Even if it is assumed that Ivey had a right or an obligation to the USAF to report security breaches, like the permissible communications in *Prudential Insurance Company of America*, possibly a mere report would have been justified. However, as discussed above, the complaint does not suggest that Ivey merely reported a potential security violation; instead, Randall alleges that Ivey reported a cover up. Moreover, while Ivey contends that he reported "truthful information to the USAF," Motion to Dismiss at 12, the complaint asserts that Ivey *falsely* reported that Randall attempted

to cover up a security incident. See *Prudential Insurance Company of America*, 29 S.W.3d at 82 ("But the right to challenge the bills would not entitle Prudential to falsely accuse FRS of fraud, knowing its charges are baseless."); cf. *Robles v. Consolidated Graphics, Inc.*, 965 S.W.2d 552, 561 (Tex. App.--Houston [14th Dist.] 1997, pet. denied) ("Even if it had no such duty, there is nothing in the law or in the Gulf Printing contract itself that prohibited Gulf Printing from disclosing this truthful, non-confidential information. Thus, by doing so, Gulf Printing did not tortiously interfere with Robles's alleged prospective business relations."). Based on the allegations in the complaint, Ivey clearly exceeded the scope of any right or obligation by falsely reporting a cover up. See *Enterprise Financial Group, Inc. v. NWAN, Inc.*, No. 3:14-CV-3378-P, 2015 WL 12743627, at *2 (N.D. Tex. May 27, 2015) (Solis, J.) (holding that the plaintiff's allegations that the defendant knowingly made false claims "do not establish that NWAN's actions were based on its legal rights or its good-faith claim to a legal right"). Taking all reasonable inferences in favor of Randall, the court cannot conclude that Ivey's conduct was justified. Therefore, Ivey does not meet his burden of establishing the affirmative defense of privilege or justification.

### 4. *Jurisdiction*

Though Randall has not moved to remand the action to state court in the instant motion, the court may *sua sponte* raise the issue of its jurisdiction at any time

during the course of litigation. *In re Bass*, 171 F.3d 1016, 1021 (5th Cir. 1999) ("Federal courts must be assured of their subject matter jurisdiction at all times and may question it sua sponte at any stage of judicial proceedings."). Title 28 U.S.C. § 1441(a) permits removal of "any civil action brought in a State Court of which the district courts of the United States have original jurisdiction." Under this statute, "[a] defendant may remove a state court action to federal court only if the action could have originally been filed in the federal court." *Aaron v. National Union Fire Insurance Company of Pittsburg, Pennsylvania*, 876 F.2d 1157, 1160 (5th Cir. 1989), *cert. denied,* 493 U.S. 1074 (1990) (citations omitted). Removal jurisdiction must be strictly construed, however, because it "implicates important federalism concerns." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997); see also *Willy v. Coastal Corporation*, 855 F.2d 1160, 1164 (5th Cir. 1988). Furthermore, "any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court." *Cross v. Bankers Multiple Line Insurance Company*, 810 F. Supp. 748, 750 (N.D. Tex. 1992) (Means, J.); see also *Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100, 108-09 (1941); *Healy v. Ratta*, 292 U.S. 263, 270 (1934). The burden of establishing federal jurisdiction is on the party seeking removal. *Frank*, 128 F.3d at 921-22; *Willy*, 855 F.2d at 1164.

There are two principal bases upon which a district court may exercise removal jurisdiction: (1) the existence of a federal question and (2) complete diversity of

citizenship among the parties.  *See* 28 U.S.C. §§ 1331, 1332.  The court can properly

exercise jurisdiction on the basis of diversity of citizenship if the parties are of

completely diverse citizenship and the case involves an amount in controversy of at

least $75,000.  *See* 28 U.S.C. § 1332(a).[7]  Here, the defendants asserted only

diversity jurisdiction in their notice of removal.  Notice at 3.  According to the notice,

the plaintiff, Randall, is a citizen of Texas and the defendant, Ivey, is also a citizen of

Texas.  See *id.*  By failing to prevail on his 12(b)(6) motion to dismiss, Ivey has not

demonstrated that he was fraudulently joined.[8]  *Id.* at 4-9.  Therefore, at this time,

Ivey remains in the action and his presence deprives the court of subject matter

jurisdiction because complete diversity of citizenship is lacking.

---

[7]     Section 1332 states, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--(1) citizens of different States. . . ."  28 U.S.C. § 1332(a)(1).

[8]     It is true that when deciding whether a defendant was improperly joined, a court may, in its discretion, pierce the pleadings and conduct a "summary inquiry."  *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016); see also Notice at 5.  However, the court declines to do so here.  Determining whether Ivey acted within the scope of his authority, whether Ivey acted in good faith, and whether Ivey's actions were justified likely requires consideration of evidence well "beyond the scope of a motion to dismiss."  See *Liu*, 2010 WL 2301019, at *5.  The necessary inquiry could be more appropriately conducted at trial or on a fully briefed motion for summary judgment -- not merely through a "summary inquiry" on a motion to dismiss.

### III.  CONCLUSION

For the reasons stated above, the defendant's motion to dismiss is **DENIED**.

This case is **REMANDED** to the **191st Judicial District Court of Dallas County, Texas**.  The clerk shall mail a certified copy of this order to the district clerk of Dallas County, Texas.  28 U.S.C. § 1447(c).

**SO ORDERED**.

May 18, 2017.

*A. Joe Fish*
_____
**A. JOE FISH**
**Senior United States District Judge**